UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


LOLA C. GREEN,

          Plaintiff,

vs.                                    Case No. 3:06-cv-775-J-HTS

MICHAEL J. ASTRUE,
Commissioner of Social
Security,[1]

          Defendant.

_____

OPINION AND ORDER[2]

I.  Status

     Lola   C.   Green   is   appealing   the   Social   Security

Administration's  denial  of  her  claim  for  Supplemental  Security

Income.   Her  alleged  inability  to  work  is  based  on  lower  back

problems  and  shortness  of  breath.   Transcript  of  Administrative

Proceedings  (Tr.)  at  85.   Plaintiff  was  found  not  disabled  by

Administrative Law Judge (ALJ) Patrick F. McLaughlin in a Decision

---

          [1]     Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J.
Astrue, Commissioner of Social Security, is substituted as Defendant herein.

          [2]     The parties consented to the exercise of jurisdiction by a United
States Magistrate Judge.  Notice, Consent, and Order of Reference - Exercise of
Jurisdiction by a United States Magistrate Judge (Doc. #14).

entered on October 24, 2005. *Id.* at 17, 23, 24 (Finding 12).  Ms.

Green has exhausted the available administrative remedies and the

case is properly before the Court.

Plaintiff indicates she is raising eight issues.  She

contends that the Commissioner erred as a matter of law
by: (1) improperly evaluating her complaints of pain; (2)
failing to consider the impact of her combined
impairments; (3) failing to accord proper weight to the
claimant's testimony; (4) improperly determining her
residual functional capacity; (5) posing incomplete
hypothetical questions to the vocational expert [(VE)];
(6) failing to accord significant weight to the opinions
of her treating and non-treating sources; (7) basing the
denial, in part, upon her non-compliance in taking her
medicine when such non-compliance was based in part on
her lack of money; and (8) issuing a decision not
supported by substantial evidence as required by 42
U.S.C. Section 405(g).[3]

Plaintiff's Memorandum of Law in Opposition to the Commissioner's

Denial of Benefits (Doc. #17; Memorandum) at 1.

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to

disability[4] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[3]     Her contentions will be examined as actually developed in the context
of specific arguments.

[4]     "Disability" is defined in the Social Security Act as the "inability
to engage in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of
not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. §
1382c(a)(3)(A).  An ALJ must follow the five-step sequential inquiry described
in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the
claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due
to an impairment meeting or equaling one listed in the regulations; 4) can
perform past work; and 5) retains the ability to perform any work in the national
economy.  *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by 'substantial evidence[.]'" *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1260 (11th Cir. 2007); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)); *see also Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III. Discussion

#### A. Pain/Credibility

Plaintiff argues "the Commissioner improperly evaluated [her] pain testimony." Memorandum at 13 (capitalization and emphasis omitted). Specifically, she claims "the body of the decision does not indicate how the ALJ discredits [her] testimony." *Id.* It appears Ms. Green is also suggesting her testimony "related to

depression and Post Traumatic Stress Disorder[,]" supported by "Dr. Legum's thorough psychological evaluation[,]" was erroneously discounted. *Id.* at 14.

The regulations recognize "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]" 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). The standard in the Eleventh Circuit for evaluating the Commissioner's treatment of pain testimony has been articulated as follows:

> The [Commissioner] must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); *see also Eckert v. Comm'r of Soc. Sec.*, 152 F. App'x 784, 790 (11th Cir. 2005) (per curiam); SSR 96-7p (outlining how subjective complaints are to be evaluated). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote*, 67 F.3d at 1561.

- 4 -

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.  If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility." *Marbury*, 957 F.2d at 839 (citation omitted). "Failure to articulate the reasons for discrediting subjective [pain] testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).

Far from failing to "indicate how [he] discredits Plaintiff's testimony[,]" Memorandum at 13, the ALJ explained he was doing so based on several considerations including medical assessments, "claimant's lack of effort regarding testing, her medical and medication noncompliance[,]" Tr. at 20, and daily living activities. *See id.* at 21. Regarding the last factor, he observed that, "[i]n addition to caring for her own young children, the claimant recently agreed to care for her 2 six-year old nephews full time." *Id.*

Plaintiff declares that her "medical records describing her pleuritic pain combined with MRI evidence of spinal degeneration

and bulging disks support her testimony[.]" Memorandum at 14.[5]
Yet, it is unclear precisely what records she means to invoke. A
Discharge Summary relating to a hospitalization from August 23,
2003, through September 3, 2003, reports her presentation "to the
emergency room with right-sided chest pain with pleuritic
component." Tr. at 180. Earlier, she had "complain[ed] of
recurrent right pleuritic chest pain[.]" *Id.* at 139; *see also id.*
at 141, 143, 184, 266-67. An MRI performed on January 29, 2002,
revealed disk degeneration and mild bulging. *Id.* at 206. However,
these records do not address ongoing functional limitations or
restrictions.

In relation to the psychological evaluation performed by Dr.
Louis Legum, it is observed the ALJ explicitly rejected the
opinions it expresses in favor of those held by "Dr. [Gene] Harris,
. . . the treating physician[.]" *Id.* at 20. "While he was able to
diagnose a psychological condition," Dr. Legum had "only examined

---

[5]      In a section of her brief concerned with the ALJ's alleged
partiality, *see id.* at 15-16, Claimant criticizes his discussion of her
noncompliance with treatment and lack of interest in working as "reflective of
his bias towards her." *Id.* at 16. As demonstrated by the Court's evaluation of
this argument, the judge's observations in this regard are supported by the
record. Further, it is noted the ALJ appears to have mentioned noncompliance as
suggestive of a lack of interest in employment. *See* Tr. at 21. He did not, as
Ms. Green's citation of authority implies, *see* Memorandum at 15, find Claimant
otherwise disabled and determine compliance would restore her ability to work.
Even if the ALJ made overly optimistic assumptions with regard to the ease of
losing weight, the overwhelming evidence pointing to noncompliance with other
treatment amply supports the judge's general portrayal of Claimant as a
noncompliant patient. Thus, although raised in the context of her argument the
ALJ was biased, Plaintiff's allegations would also fail to illuminate any fatal
defect in the judge's credibility analysis.

the claimant on one occasion[ whereas] Dr. Harris" had the opportunity to assess "the impact [Claimant's] psychological conditions had on [her] overall daily functioning." *Id.* As pointed out by the judge, "Dr. Harris opined in April of 2003 that the claimant did not have a mental impairment that significantly interfered with her daily functioning." *Id.; see id.* at 165. The ALJ additionally "considered the opinions from state agency psychological consultants[,] which were consistent with the [judge's] findings[.]" *Id.* at 20; *see id.* at 166-79 (finding mild limitations), 299-312 (finding no significant functional impairment, mild concentration deficit).

Finally, after noting Claimant's decision to care for two young children (in addition to her own) on a full time basis, the judge took aim at her claim that "she is . . . too embarrassed to seek treatment[ for her allegedly severe depression]. The records do not imply that the claimant is too reserved to seek help if necessary as she frequently visited doctors and appeared expressive of her various medical problems." *Id.* at 21; *cf. id.* at 341 (testimony regarding embarrassment as a reason for not having received treatment for depression). As to childcare responsibilities, Plaintiff admits "[s]he is the primary caretaker of . . . children ages 8, 6, 6, and 4." Memorandum at 6; *see also*, *e.g.*, Tr. at 327. The ALJ's observation about frequent medical

visits is also accurate.  Ms. Green completely fails to address the ALJ's reasoning and makes no argument as to why the ALJ was required to accord controlling weight to Dr. Legum's opinions.

**B.  Combination of Impairments**

Ms. Green contends "[t]here is no indication that the ALJ considered the combined effects of [her] depression, Post Traumatic Stress Disorder, and lumbar and pleuritic pain in reaching his denial decision or in the formulation of the four hypothetical questions."  Memorandum at 14.

With regard to the combined effect of impairments, the Eleventh Circuit has stated:

> [A]n ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled.  We have reasoned that it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment.  In *Bowen v. Heckler*, [748 F.2d 629 (11th Cir. 1984),] this court also cited with approval the reasoning of other courts that a disability claimant should be evaluated as a whole person, and not evaluated in the abstract as having several hypothetical and isolated illnesses.

*Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (internal quotation marks and citations omitted); *see also Callahan v. Barnhart*, 186 F. Supp. 2d 1219, 1226-27 (M.D. Fla. 2002).  The requirement to consider the combined effects of a claimant's impairments entails two distinct duties.  First, the ALJ must consider all impairments and omit none.  *See Walker v. Bowen*, 826

- 8 -

F.2d 996, 1001 (11th Cir. 1987) (per curiam).  Second, the judge must consider the combined effect of the claimant's various impairments, even those the ALJ finds to be not severe, on his or her ability to work.  *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e); *Bruet v. Barnhart*, 313 F. Supp. 2d 1338, 1344 (M.D. Fla. 2004).

At the third step of the sequential inquiry, the ALJ determined none of Plaintiff's impairments, "either singly or in combination[,]" met or equaled a Listing.  Tr. at 19.  Moreover, after moving on to the next step, the judge stated he "considered the singular and cumulative effect of the claimant's subjective complaints and medications, including the impact that her obesity has on her mobility[.]"  *Id.* at 20.  A review of the Decision does not reveal a failure to evaluate Claimant as a whole person.  Her one-sentence contention to the contrary is thus not deemed persuasive.

**C.  Impact of Obesity on Residual Functional Capacity (RFC)**

It is claimed the ALJ "failed to consider how Plaintiff's obesity impacted her ability to work."  Memorandum at 14.  She implies the judge neglected the dictates of SSR 02-01p.  *See id.*

An individual's impairments, including any related symptoms, such as pain, "may [result in] physical and mental limitations that

- 9 -

affect what [one] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is defined in the regulations as what an individual "can still do despite [his or her] limitations." *Id.* It can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition. *See id.* §§ 404.1545(a)(3), 416.945(a)(3). Thus, "observations of [a claimant's] limitations from [his or her] impairments . . . provided by [the claimant, his or her] family, neighbors, friends, or other persons" will be considered. *Id.* This assessment is not to be equated with the ultimate decision on disability, but is merely an interim evaluation considered along with other factors in making the disability decision. *See id.* §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). An individual's limitations may be exertional, nonexertional, or both. *Id.* §§ 404.1569a(a), 416.969a(a).

The regulations provide that decisions regarding an individual's RFC are made solely by the Commissioner. *See id.* §§ 404.1546, 416.946. According to SSR 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

The ALJ recognized Claimant's obesity as one of her severe impairments. Tr. at 19. In determining her RFC, he again took

note of the condition and explicitly indicated his cognizance of
SSR 02-01p.[6]  *See id.* at 20.   Clearly, then, his RFC assessment
embodies his finding as to what Ms. Green could still do despite
her medical and psychological difficulties, including obesity.
Absent from Plaintiff's brief is any suggestion of what additional
limitations should have been ascribed as a result of obesity as
demonstrated in the record, and so it must be concluded that no
error in this regard has been elucidated.

### D.  Hypothetical

"None of the hypothetical questions[,]" complains Plaintiff,
"specifically quantify the amount of time [her] obesity limits her
ability to perform work."  Memorandum at 15.   Additionally, she
asserts "[t]he ALJ failed to quantify the amount of time
[her] . . . moderate limitation of interacting socially[ impacts]
upon her ability to perform any of the jobs initially identified by
the VE."  *Id.*

For VE testimony to provide substantial evidence of a
claimant's ability to work, the hypothetical question eliciting
that testimony must have described adequately all significant
impairments and other occupational factors.   *See Phillips v.
Barnhart*, 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (question must

---

[6]     Consistent with SSR 02-01p, the ALJ considered obesity throughout the
sequential evaluation process.

include all impairments); *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (per curiam) (VE testimony needs to relate to person with claimant's education, skills, experience, and limitations). The necessity of comprehensiveness does not, of course, extend to limitations properly rejected by the ALJ. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam).

In specifying the claimant's impairments, the judge is not required to use diagnostic terms or refer to the medical conditions themselves. *See Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (per curiam); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999) (citing *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996)). Rather, the individual's functional limitations are to be conveyed to the expert. *See Cooper*, 217 F. App'x at 453; *Webb*, 368 F.3d at 633.

As discussed, no error has been revealed concerning the impact of obesity on Claimant's RFC. Accordingly, insomuch as the ALJ's residual functional capacity finding does not speak in terms of "the amount of time Plaintiff's obesity limits her ability to perform work[,]" Memorandum at 15, there would be no associated need to specify any such dimension in a hypothetical question.

Ms. Green's contention as to her social functioning is equally unavailing. The judge, "[a]pplying the Psychiatric Review

Technique, [found] that the claimant's mental limitations result in mild restrictions of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace." Tr. at 19.  On the other hand, Plaintiff writes as though a "moderate limitation of interacting socially" had been recognized.  Memorandum at 15.  Even Dr. Legum, whose opinions were discounted by the ALJ, did not specify moderate social limitations.  He reported that, although Ms. Green is uncomfortable in crowds, she "feels that she is close to her siblings[,]" has a marriage "that . . . is going fairly well[,]" is "interest[ed in] being a housewife and raising her children[,] is not sure if she experiences anxiety[,]" Tr. at 288, and "denies any panic symptoms."  *Id.* at 289.  During the examination, "[s]he was cooperative with fair eye contact.  Her intelligence appear[ed] average, and she was oriented to all three spheres."  *Id.; cf., e.g., id.* at 334 (testimony by Claimant that she "get[s] along okay with people").[7]

---

[7]        In a background section of her brief, Plaintiff asserts that "Dr. Legum opined a GAF of 55 which is consistent with moderate difficulty in social, occupational, or school functioning."  Memorandum at 9 n.4 (internal quotation marks omitted).  Although not properly part of her argument, this contention will be addressed briefly.  The "Global Assessment of Functioning [(GAF)] Scale is used to report the clinician's judgment of the individual's *overall* level of functioning."  *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 663 n.2 (8th Cir. 2003) (emphasis added) (internal quotation marks omitted).  "GAF scores of 51-60 indicate'[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Id.* (quoting *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision 2000) (alteration in original)).  As merely "a global reference scale [intended] to aid in . . . treatment[,]" *Jiles v. Barnhart*, No. Civ.A. 05-

Perhaps Claimant meant to argue the ALJ erred by failing to specify the presence of mild social limitations in a hypothetical question.  Even if that were the case, no basis for remand has been demonstrated.   Despite his inclusion of depression and posttraumatic stress disorder among the severe impairments found, *id.* at 19, it is apparent the ALJ did not believe the presence of mild psychological restrictions interfered significantly with Plaintiff's capacity to perform the work-related activities contemplated by the limited RFC he assigned.  "Indeed, it would seem that a 'mild' limitation as to a basic work activity is necessarily not 'significant.'"  *Duvergel v. Apfel*, No. 99 Civ. 4614(AJP), 2000 WL 328593, at *11 n.27 (S.D.N.Y. Mar. 29, 2000); *see also Perez Torres v. Sec'y of Health & Human Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989) (per curiam).  The judge was under no obligation to incorporate insignificant difficulties into the hypothetical.  *See Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

---

G-0861-S, 2006 WL 4402937, at *2 n.1 (N.D. Ala. Sept. 11, 2006), a GAF score does not itself necessarily reveal a particular type of limitation and "is not an assessment of a claimant's ability to work[.]"  *Id.* (also noting the Commissioner's acknowledgment "that GAF scores do not have a 'direct correlation to the severity requirements in [the] mental disorders listings'" (quoting 65 Fed.Reg. 50,746 at 50,764-65 (Aug. 21, 2000)).  Thus, an opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to social functioning.

### E.  Noncompliance with Treatment/Bias

Asserting the judge's doubts as to her interest in working and his finding "that non-compliance with medications and treatment was often 'directly related to [her] difficulties'" are unfounded, Memorandum at 15, "Plaintiff submits that the ALJ's observations are reflective of his bias towards her.  Should this matter be remanded for further proceedings, Plaintiff should be permitted to present her case to a different ALJ."  *Id.* at 15-16.

Contrary to Ms. Green's position, record evidence supports the ALJ's statements.  For instance, Plaintiff's lack of interest in working is suggested by Dr. Legum's reporting that "[s]he feels that her interest is being a housewife and raising her children" and "does not like to do anything."  Tr. at 288.  Noncompliance with treatment (and its consequences) is indicated in several places in the record.  *See, e.g., id.* at 141 ("[S]he did not take the recommended dose and she began developing chest pain."), 142 ("It is unclear as to whether she has actually been taking the Coumadin correctly."), 143 ("ongoing compliance issues"), 144 ("variable compliance"), 181 ("Coumadin teaching again reemphasized.  Instructed her again to stop smoking . . . ."), 217 ("Again smoking cessation encouraged."), 223 (patient "reminded needs to take Coumadin"), 229 ("need for compliance re-emphasized"), 245 (patient "should [have] had Coumadin [but] ran

out of meds"), 266 ("She is supposed to be on Combivent and Advair at home, but she has had a questionable compliance with her medication."), 269 ("Extensive Coumadin teaching was again done[.]"), 272 (bleeding problems could not "be controlled hormonally because of her heavy smoking"), 277 ("[U]nfortunately [she] was not using her inhalers on a regular basis.  She also continues to smoke." "Smoking cessation[ and w]eight reduction program likewise advised.").  Even her effort during testing "appear[ed] questionable." *Id.* at 125.  In that Plaintiff's only ground for claiming bias on the part of the judge is that "[n]o . . . evidence exists" to support the observations at issue, Memorandum at 15, it is concluded remanding the case to a different ALJ is unnecessary.

**F.  Reliance on Reviewing Physician**

According to Claimant, "[t]he ALJ relied upon the opinion of a non-examining, non-treating [reviewer] to conclude that [she] was capable of performing work at the 'light' exertional level." *Id.* at 16.  She implies this was insufficient, and that the Decision required the support of an RFC "assessment of a treating or examining physician." *Id.*

An ALJ is required to consider every medical opinion that is in evidence. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Unless a treating source is given controlling weight, an opinion should be

- 16 -

evaluated by examining such factors as: (1) length and frequency of treatment (if any), (2) nature and extent of the relationship, (3) supportability, (4) consistency, and (5) specialization. *See id*. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

In arriving at an RFC finding, the judge did not rely exclusively on the opinions of reviewing physicians. Rather, he analyzed information from various sources including examining and treating doctors. *See* Tr. at 19-21. Concerning the asserted need for an examining source's RFC evaluation, it has been held in the First Circuit that "where a claimant . . . has some objective symptoms, the Commissioner is required to obtain an RFC assessment from an examining physician." *Morales Colon v. Comm'r of Soc. Sec.*, 245 F. Supp. 2d 395, 400 (D.P.R. 2003) (citing, inter alia, *Heggarty v. Sullivan*, 947 F.2d 990 (1st Cir. 1991) (per curiam); *Vigo Ramos v. Comm'r of Soc. Sec.*, 241 F. Supp. 2d 139 (D.P.R. 2003); *Rivera Ocasio v. Comm'r of Soc. Sec.*, 213 F. Supp. 2d 81 (D.P.R. 2002)). Yet, "[i]n all of these cases, the Court's determination to remand was based on the fact that medical reports and opinions of the treating physicians . . . were in stark disaccord with the RFC assessments prepared by non-examining physicians." *Torres v. Comm'r of Soc. Sec.*, Civil No. 04-2309 (DRD/GAG), 2005 WL 2148321, at *1 (D.P.R. Sept. 6, 2005) (referring to several cases, including *Morales Colon, Vigo Ramos,* and *Rivera*

*Ocasio*).    Here,  such  is  not  the  situation.    As  previously
mentioned, Dr. Harris, Ms. Green's treating physician, *see* Tr. at
331, has opined that no mental impairment significantly impedes her
daily functioning. *See id.* at 165.   Furthermore, the documentation
from  this  doctor,  including  a  medical  questionnaire  dated  from
January 2003, *see id.* at 150-51 (reporting "some loss of motion[,]
3/5 grip strength" with an unquantified capacity for manipulation,
ability  to  squat,  no  assistive  device  needed  for  ambulation),  is
not  clearly  inconsistent  with  the  reviewing  physicians'  opinions.
Accordingly, even were this Court to adopt as persuasive the First
Circuit precedent alluded to, "the lack of a[n] RFC assessment from
an  examining  medical  expert  [would]  not  render  the  ALJ's  decision
. . . unsupported by substantial evidence of record." *Torres*, 2005
WL 2148321, at *1.

   **G.   Job Demands**

   Plaintiff   complains   the   judge   "relied   upon   his   own
interpretation of the descriptors for the 'Labeler' and 'Photograph
Finisher' jobs and rejected the post hearing testimony of the VE
that  [she]  was  not  capable  of  performing  these  occupations[.]"
Memorandum at 16.

   In response to a hypothetical closely paralleling the ALJ's
eventual RFC assessment, *see* Tr. at 21, 23 (Finding 5), 349, the VE
opined Claimant would be able to perform work including that of a

"labeler" and "photograph finisher[.]"  *Id.* at 350.  Ms. Green's
representative asked for, and received, permission to propound
post-hearing interrogatories to the VE.  *See id.* at 354-56.
Through these queries, the lawyer had the VE "compar[e Plaintiff's]
past relevant work . . . with the requirements for [the] position[s
to determine if she is] under qualified in" certain ways.  *Id.* at
68-69.  The matter being put in this way, the expert replied that
Claimant would indeed be under qualified and so "[c]ould not
perform" the jobs.  *Id.*  Added to one of the VE's answers is the
caveat "that prior work is not always a true indicator of an
individual's aptitudes."  *Id.* at 66.

The judge explains he "thoroughly reviewed the interrogatories
. . . [but] notes . . . that these interrogatories improperly asked
the vocational expert to compare the requirements associated with
the claimant's past relevant work as a day worker to the positions
of labeler and a photography finisher."  *Id.* at 22-23 n.1.
Observing "that the claimant's residual functional capacity is not
determined by the claimant's past relevant work alone," and having
"determined the applicable residual functional capacity in this
case[,]" the judge remained "satisfied that the vocational expert
identified relevant occupations."  *Id.* at 23 n.1.

The ALJ's interpretation of these unusual circumstances stands
as eminently reasonable.  It seems the attorney's questioning led

- 19 -

the VE to assume Claimant's RFC was to be redefined.  Of course, the determination of RFC is reserved for the Commissioner, *see* 20 C.F.R. §§ 404.1527(e)(1)-(3), 404.1546, 416.927(e)(1)-(3), 416.946, and the VE's role does not extend to furnishing opinions about the actual limitations experienced by a claimant.  The engendering of a mistaken legal assumption on the part of the VE is simply not sufficient to cast doubt on the judge's determination.

### IV.  Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's decision.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of November, 2007.

/s/      Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of record
      and pro se parties, if any